**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| SHAWN S. PRATE, | ) | No. 19 B 9980 |
| | ) | |
| Debtor. ) | | Judge Goldgar |

## MEMORANDUM OPINION

After Emmolly Corporation sold its roofing business to Shawn Prate, a former employee

and officer, Emmolly's owner, Michael Prate, allegedly discovered that Shawn had been

submitting false expense reports, embezzling money, and taking kickbacks from subcontractors.

Michael and Emmolly sued Shawn in Illinois state court. Three years later, with the state court

action still unresolved, Shawn filed a chapter 7 bankruptcy petition. Michael and Emmolly then

responded with an adversary proceeding objecting to Shawn's discharge and asserting that

Shawn's debt to Michael and Emmolly is nondischargeable. The adversary proceeding has been

pending for two years.

Emmolly and Michael have now moved under 11 U.S.C. § 362(d) to lift the stay so they

can resume their state court action. For the reasons discussed below, the motion will be denied.

### 1. Jurisdiction

The court has subject matter jurisdiction under 28 U.S.C. § 1334(a) and the district

court's Internal Operating Procedure 15(a). This is a core proceeding. 28 U.S.C. §

157(b)(2)(G); *In re D/C Distrib., LLC,* 617 B.R. 600, 605 (Bankr. N.D. Ill. 2020).

## 2. Background

The facts come from the parties' papers and the state court complaint as well as from the dockets in the bankruptcy case, the adversary proceeding, and the state court action.[1] No facts are in dispute.[2]

Michael Prate owns Emmolly Corporation which in turn operated Michael's Roofing, a roofing and siding business in Lake County, Illinois. Shawn Prate worked for Michael's Roofing from 2009 to 2013, first as a salesman, then as manager, vice president, and secretary. In 2013, Emmolly sold the assets of the business to Shawn and another person for $25,000. In return, Shawn agreed to pay Michael a weekly consultant's fee and a commission on projects he referred to the business.

Two years later, Michael discovered that before the sale, Shawn had been engaged in a scheme to defraud Michael's Roofing, Emmolly, and Michael Prate himself. Specifically, Shawn submitted and received payment for false expense reports. He accepted cash payments for work the business performed and kept the payments. And he inflated the cost of work subcontractors had performed and took kickbacks from the subcontractors. The kickbacks alone totaled roughly $100,000.

In early 2016, Michael and Emmolly sued Shawn in Illinois state court. The six-count complaint alleged claims for fraud and breach of contract and sought damages as well as rescission of the sale. The docket in the action discloses a jury demand. In the three years since the complaint was filed, the parties have conducted what Emmolly and Michael call

---

[1] The court can take judicial notice of its own docket and the dockets of other courts in related matters. *Pausch v. DiPiero (In re DiPiero)*, 553 B.R. 122, 125 n.1 (Bankr. N.D. Ill. 2016).

[2] The facts alleged in the state court complaint are taken as true only for purposes of this opinion to produce a readable narrative.

"voluminous written discovery" and have begun depositions.  As far as the record shows, though, the parties have not finished the depositions, discovery has not closed, and no trial date has been set.[3/]

In early 2019, Shawn filed a chapter 7 bankruptcy petition.  Michael then filed an adversary proceeding objecting under 11 U.S.C. § 727(a)(2)(A) to Shawn's discharge and alternatively under 11 U.S.C. §§ 523(a)(2), (4), and (6) to the dischargeability of Shawn's allegedly $800,000 debt.  Discovery in the adversary proceeding closed in September 2020, more than a year ago.  A month later, Shawn moved for summary judgment on the complaint.  His motion was denied.  Seven months after that, Michael and Emmolly moved for partial summary judgment on the section 727(a)(2)(A) claim.  Their motion was also denied.  The matter is ready for trial, but no trial date has been set.

Although two years have passed and the adversary proceeding is on the brink of trial, Michael and Emmolly now ask to have the stay lifted so they can return to the state court and proceed with their action against Shawn.  Shawn opposes the motion.

### 3. Discussion

The motion will be denied.  Because the bankruptcy court has exclusive jurisdiction over the section 523(a) claims, only this court can decide all the issues those claims present.[4/] Maintaining the stay will mean the litigation ends here.  Lifting the stay so the parties can litigate

---

[3/]      The state court's docket is typically uninformative, *see In re Sweports, Ltd.*, 565 B.R. 129, 132 n.3 (Bankr. N.D. Ill. 2017) (noting the unavailability online of papers filed with Illinois courts and the "often cryptic" nature of the electronic docket entries), but the many entries that say "jury trial" or "set jury trial" appear not to represent a trial or even a trial date.

[4/]      Michael and Emmolly have moved for voluntary dismissal of their section 727(a)(2)(A) claim.  That motion will likely be granted and the claim objecting to discharge dismissed, leaving only the section 523(a) claims pending.

in the state court, in contrast, will still require a return trip to the bankruptcy court to determine

dischargeability even if Emmolly and Michael prevail.  The most efficient and least burdensome

route for both sides is to have the bankruptcy court dispose of their dispute.  And this court is

ready to dispose of it; the state court is not.

The automatic stay in section 362(a) of the Bankruptcy Code halts a variety of creditor

actions against the debtor, the debtor's property, and property of the estate during the bankruptcy

case.  11 U.S.C. § 362(a); *Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 755-56 (9th Cir.

1995) (internal quotation omitted).  The stay is "one of the fundamental debtor protections

provided by the bankruptcy laws," *Midlantic Nat'l Bank v. New Jersey Dep't of Env'tl Prot.*, 474

U.S. 494, 503 (1986) (internal quotation omitted), because it preserves the estate and gives the

debtor some respite from creditors, *In re Grede Foundries, Inc.*, 651 F.3d 786, 790 (7th Cir.

2011); *Dean*, 72 F.3d at 755-56.  Unless estate property is concerned, the stay remains in effect

until the case is closed or dismissed or the debtor is discharged, whichever occurs first.  11

U.S.C. § 362(c).

That said, even before the stay expires under the Code it may be lifted for, among other

things, "cause."  11 U.S.C. § 362(d)(1).  "Cause" is not defined (except as a lack of adequate

protection) and depends on a "balancing of the costs and benefits of maintaining the stay" under

"the facts of the specific case."  *In re Comdisco, Inc.*, 271 B.R. 273, 276 (Bankr. N.D. Ill. 2002).

When a creditor asks for the stay to be lifted to proceed with an action in another court, courts in

this circuit consider three factors:

> (1) whether any "great prejudice" to the estate or the debtor will
> result if the stay is lifted;

> (2) whether the hardship from continuing the stay "considerably
> outweighs" the hardship to the debtor from lifting it; and

(3) whether the creditor has a probability of prevailing on the
merits of its action.

*IBM v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735

(7th Cir. 1994); *see also In re Udell*, 18 F.3d 403, 410 (7th Cir. 1994).  Whether to lift the stay is

committed to the bankruptcy court's discretion.  *Colon v. Option One Mortg. Corp.*, 319 F.3d

912, 916 (7th Cir. 2003).

Here, the first two factors collapse into one, because both sides will be better off if the

motion is denied and the stay remains in place.  That is so because only one court, the

bankruptcy court, can dispose of all the issues no matter who wins.  If the stay is lifted and

Shawn wins in the state court, the parties' dispute will be over.  The same is true if the stay

remains in place and Shawn wins: again, the dispute will be over.  If the stay is lifted, on the

other hand, and Emmolly and Michael win in the state court, the parties will have to return to

this court – because the state court cannot determine whether Shawn's debt is dischargeable.

Only this court can.  *See* 11 U.S.C. § 523(c)(1); *In re Kontrick*, 295 F.3d 724, 733 (7th Cir.

2002), *aff'd sub nom. Kontrick v. Ryan*, 540 U.S. 443 (2003).  But if the stay remains in place

and Emmolly and Michael win, the dispute will be over because this court can liquidate Shawn's

debt, *Siragusa v. Collazo (In re Collazo)*, 817 F.3d 1047, 1053 (7th Cir. 2016); *N.I.S. Corp. v.*

*Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir. 1991), and also decide its

dischargeability.[5/]  Only by maintaining the stay, then, will there be no risk of splitting the

---

[5/]      The later decision in *Bush v. United States*, 939 F.3d 839, 846 (7th Cir. 2019),
*pet'n for reh'g pending* (No. 16-3244), does not undermine *Collazo*.  *Bush* criticized *Collazo*'s
suggestion that "entry of a money judgment following the conclusion of a bankruptcy always is
'related to" that bankruptcy."  *Id.* at 844.  But the critical word is "always."  *Bush* did not
concern a bankruptcy court's power to enter a money judgment while determining
dischargeability and did not fault *Collazo*'s conclusion in that context.  *See* Ralph Brubaker,
*Federal Bankruptcy Jurisdiction to Enter a Money Judgment on a Nondischargeable Debt: A*
*Tale of Two Seventh Circuit Decisions and Related-To Jurisdiction (Part I)*, 40 Bankr. L. Letter

dispute between two courts.

The parties will also have their dispute decided sooner if the stay remains in place. According to the parties, the state court action is still in the discovery stage.  Written discovery has been conducted and some depositions have been taken.  But some depositions appear to remain, and discovery is not closed.  No trial date has been set.  The adversary proceeding, meanwhile, is further along.  Discovery has been closed for more than a year, and both sides have filed potentially dispositive motions that were denied.  The proceeding is ready for trial.  It can be tried as soon as February 2022 if the parties and counsel are available.

The third factor, finally, is neutral.  The creditor's likelihood of success on its claim presumably is relevant when the creditor can pursue its claim only in another forum, something the stay is preventing.  Here, however, Michael and Emmolly can pursue their fraud claims against Shawn – and in fact are pursuing them – in the bankruptcy court.  If they prevail, Michael and Emmolly can obtain both a money judgment against Shawn and a decision on the judgment's dischargeability.  They are not put to the choice of litigating in the state court or not at all.  When it comes to *where* they must litigate, the strength of their claims is beside the point.[6]

Because maintaining the stay will ensure that one court, not two, decides the parties' dispute, and because the litigation has advanced further in the bankruptcy court than in the state court, the hardship to both parties from lifting the stay outweighs the hardship (if any) from

---

No. 5 (2020) (stating that "*Bush* should *not* be interpreted as overturning *Hallahan* or *Collazo*" (emphasis in original)).

[6]     Also beside the point is the effect on the estate if the stay is lifted.  There will be no effect either way.  The estate is neither a party in the state court action nor a party here, and the trustee has issued a "no distribution" report declaring that the estate has no property available for distribution to creditors.

keeping it in place.  Michael and Emmolly's motion to lift the stay will be denied.

For their part, Michael and Emmolly argue mainly that Shawn is wrong to say *Fernstrom* "precludes the Court from granting [relief from the stay]." (P. Supp. Mem. at 1).  They contend *Fernstrom* is "easily distinguishable" because the decision was a case under chapter 11, not chapter 7, and involved a subrogation action against an insurance company, not an action against the debtor. (*Id.* at 2-3).  But Shawn has never suggested *Fernstrom* "precludes" lifting the stay, only that applying *Fernstrom*'s test here does.  And there is no question that the *Fernstrom* test applies beyond the decision's facts.  *See Udell*, 18 F.3d at 410; *see also Tyson v. Jones & Laughlin Steel Corp.*, 958 F.2d 756, 759 (7th Cir. 1992) (citing *Fernstrom* and noting that the "automatic stay may be modified to permit resumption of civil suit"); *Littlefield v. McGuffey*, 954 F.2d 1337, 1342 (7th Cir. 1992) (same).  *Fernstrom* has supplied the applicable test in this circuit for more than three decades.[7]

In place of *Fernstrom*, Michael and Emmolly rely on *Buke, LLC v. Eastburg (In re Eastburg)*, 440 B.R. 851 (Bankr. D.N.M. 2010), *aff'd*, 447 B.R. 624, 631-32 (B.A.P. 10th Cir. 2011). (P. Mot. at 6-7; P. Supp. Mem. at 4).  But *Buke* is a bankruptcy court decision from another circuit.  As Shawn correctly points out, federal trial court decisions are not binding, let

---

[7]       *See, e.g., In re Heotis*, No. 17 C 886, 2018 WL 1534970, at *7 (N.D. Ill. Mar. 29, 2018); *Spencer v. PNC Bank, N.A.*, No. 14-cv-422-wmc, 2015 WL 1520912, at *4 (W.D. Wis. Apr. 2, 2015); *In re Archdiocese of Milwaukee*, 523 B.R. 655, 659 (E.D. Wis. 2014); *In re Quay Corp.*, No. 05 C 7235, 2006 WL 931734, at *2 (N.D. Ill. Apr. 6, 2006); *Sears, Roebuck & Co. v. Jackson*, No. 99 C 3176, 1999 WL 703730, at *1 (N.D. Ill. Aug. 26, 1999); *In re Aiwa Corp.*, 630 B.R. 494, 496 (Bankr. N.D. Ill. 2021); *In re Pride Aircraft, Inc.*, No. 20 B 81435, 2020 WL 6929428, at *3 (Bankr. N.D. Ill. Oct. 30, 2020); *In re D/C Distrib.*, 617 B.R. at 611; *In re Webster Place Athletic Club, LLC*, No. 18 B 2543409, at *4 (Bankr. N.D. Ill. June 18, 2019); *In re Budd Co.*, No. 14 B 11873, 2016 WL 556287, at *1 (Bankr. N.D. Ill. Feb. 10, 2016); *In re Johnson*, No. 12-24085-svk, 2014 WL 1356058, at *2 (Bankr. E.D. Wis. Apr. 7, 2014); *In re Betzold*, 316 B.R. 906, 917-18 (Bankr. N.D. Ill. 2004); *In re Wrobel*, 197 B.R. 289, 296 (Bankr. N.D. Ill. 1996).

alone federal trial court decisions from other circuits.  Court of appeals decisions from this circuit, on the other hand – *Fernstrom*, for example – are.  *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004); *see, e.g., In re Allegretti*, 584 B.R. 287, 292 n.8 (Bankr. N.D. Ill. 2018); *In re Caesars Entm't Operating Co.*, No. 15 B 1145, 2016 WL 7477563, at *2 n.2 (Bankr. N.D. Ill. Aug. 9, 2016).

 *Buke* is unpersuasive in any event.  Pending before the bankruptcy court in *Buke* was a creditor's adversary proceeding under sections 523(a) and (c) and a motion to modify the discharge injunction so the creditor could return to state court.  The bankruptcy court declared that "upon the timely filing of a complaint objecting to the dischargeability of a debt, the discharge injunction does not apply with respect to that debt until the Court makes a determination of . . . dischargeability."  *Buke*, 440 B.R. at 855.  From that premise, the rest of the analysis flowed.  "[B]ecause there has been no determination of the dischargeability of the debt, the court found, "the discharge injunction is not yet applicable to that debt."  *Id.* at 857-58.

 As other courts have observed, *Buke*'s premise was wrong.  There is no presumption that once the discharge issues, debts subject to an adversary proceeding under sections 523(a)(2), (4), or (6) are considered nondischargeable even before the creditor obtains a judgment saying so.  The presumption is in fact the reverse:  debts are considered discharged until *excepted* from the discharge.  *In re Gibellino-Schultz*, 446 B.R. 733, 740-41 n.5 (Bankr. E.D. Pa. 2011) (rejecting *Buke*); *see also Mountain Valley Cmty. Bank v. Freeman*, 508 B.R. 247, 250 n.22 (M.D. Ga. 2014).  The bankruptcy appellate panel in *Buke* itself disagreed with the bankruptcy court's premise.  Although the panel affirmed the decision (finding no abuse of discretion in modifying the discharge injunction), it noted there was "little authority" to support the premise and declared it "sounder both in theory and in practice" to presume debts discharged until declared

nondischargeable.  *Buke,* 447 B.R. at 631-32;.  *Buke* is no help to Michael and Emmolly.[8]

Michael and Emmolly also cite *Tidwell v. Smith (In re Smith)*, 582 F.3d 767 (7th Cir. 2009), calling it "even more analogous" to this case than *Buke*.  (P. Supp. Mem. at 4).  In fact, *Smith* is even less relevant.  In *Smith*, two creditors pursuing adversary proceedings under sections 523(a)(3)(B) and (6) asked the bankruptcy court to modify the discharge injunction so they could resume their action against the debtor in state court.  The bankruptcy court granted the motion.  *Smith*, 582 F.3d at 773-75.  On appeal, the debtor argued that the discharge injunction should not have been modified – but only because the bankruptcy court had wrongly found the creditors lacked notice of the bankruptcy case and so could proceed under section 523(a)(3)(B).  *Id.* at 777-80.  The court of appeals disagreed and affirmed, limiting itself to the notice question.  *Id.*  There is no similar question here.  Michael and Emmolly have no claims under section 523(a)(3)(B).

Assuming the *Fernstrom* test applies here (and it does), Michael and Emmolly argue in the alternative that the *Fernstrom* factors favor lifting the stay.  (P. Supp. Mem. at 5).  But in making their argument, they again fall back on *Buke*'s faulty premise – that once the discharge issues, debts subject to a pending adversary proceeding under section 523(a)(2), (4), or (6) are treated as excepted from discharge.  So, Michael and Emmolly say, they "will be entitled to proceed with their state court action once [this] court issues a discharge order." (*Id.*).  But the discharge will change nothing.  Shawn's debt, if any, will not be presumed excepted from the discharge, and the discharge will not suddenly free up Michael and Emmolly to proceed in the

---

[8]   Even the bankruptcy judge in *Buke* later changed his mind.  *See Alarid v. Pacheco (In re Pacheco)*, 616 B.R. 126, 136-37 (Bankr. D.N.M. 2020) ("The Court agrees that the best construction of 11 U.S.C. § 523(c)(1) is that a debt is discharged while a nondischargeability action relating to that debt is pending.") (Jacobvitz, C.J.).

state court.  Shawn's debt (if any) will instead be treated as discharged until Michael and

Emmolly prove it is not, and they will have to prove nondischargeability in this court, not the

state court.

Michael and Emmolly next insist that the hardship they will suffer if the stay remains in

place outweighs any hardship to Shawn.  They point to the years the state court action has been

pending and the discovery the parties have taken.  (P. Supp. Mem. at 5).  What they ignore,

though, is that discovery in the state court action is continuing, and discovery in the adversary

proceeding is closed.  The adversary proceeding is ready to be set for trial; the state court action

is not.  They also ignore the bankruptcy court's power to decide both the debt and its

dischargeability, a power the state court lacks.  Even Michael and Emmolly will be better off if

their motion is denied and the stay maintained.

Michael and Emmolly also argue they are likely to prevail on their claims in the state

court.  But they fail to explain why their likely state court success would support lifting the stay

when they are pursuing the same claims in the bankruptcy court.  Even if it did, the reasons they

offer for their projected success are unpersuasive.  They point out that (1) the state court

sanctioned Shawn for discovery violations, (2) Shawn has not filed a potentially dispositive

motion in the state court, and (3) the parties sought to mediate their dispute.  (P. Supp. Mem. at

6).  Discovery sanctions, though, are imposed because of a party's behavior during discovery;

they do not necessarily suggest anything about that party's position on the merits.  A party may

well refrain from filing a potentially dispositive motion because the motion is unlikely to be

dispositive.  Few cases are subject to summary disposition.  And parties typically mediate to

save time and money and to control the outcome, not because they believe their claims are weak.

Finally, Michael and Emmolly stress that they "are entitled to a . . . jury" in their state

-10-

court action.  (P. Supp. Mem. at 5).  But their right to a jury trial in the state court is no reason to lift the stay here.  Michael and Emmolly have no right to a jury in the bankruptcy court on the question of dischargeability.  *Hallahan*, 936 F.2d at 1508; *DiPiero*, 553 B.R. at 132.  And although courts differ about a creditor's right to a jury on the amount of the debt itself, *compare Breuer v. Hawthorne (In re Hawthorne)*, Nos. A11-00659-DMD, A11-90028-DMD, 2012 WL 1143656, at *4 (Bankr. D. Alaska Apr. 4, 2012) (finding a right to a jury), *with Byrnes v. Byrnes (In re Byrnes)*, Nos. 20-12086-t7, 20-1070-t, 2021 WL 2184392, at *4-5 (Bankr. D.N.M. May 27, 2021) (finding no such right), Michael and Emmolly did not demand a jury in their adversary proceeding, and the time to demand one has long passed, *see* Fed. R. Civ. P. 38(b)(1) (made applicable by Fed. R. Bankr. P. 9015(a)).  They have waived any jury right they had.

### 4.  Conclusion

The motion of Michael S. Prate and Emmolly Corporation to lift the stay is denied.  A separate order will be entered consistent with this opinion.

Dated:  November 5, 2021

_____
A. Benjamin Goldgar
United States Bankruptcy Judge